GREAT NORTHERN RY. CO. v. HERRON.

(Circuit Court of Appeals, Eighth Circuit. March 13, 1905.)

No. 2,015.

**1. PLEADINGS—AMENDMENT—DISCRETION OF COURT.**
Federal courts have large discretion to permit the correction of defects in pleadings or process by amendment, and rulings on the subject constitute no ground for reversal unless the discretion is grossly abused.

**2. SAME—DEFECTIVE ALLEGATION.**
Where a complaint contains any allegation of a ground of recovery, although only inferential, it is within the discretion of the court to permit the defect to be cured by amendment.

**3. SAME.**
In an action against a railroad company to recover for property of plaintiff destroyed by a prairie fire alleged to have been started from defendant's train, the complaint alleged that the property, consisting of stacks of hay and a cattle shed, was all situated on a section described. *Held*, that it was an abuse of discretion to allow an amendment during the trial alleging that the shed was three-quarters of a mile from said section and from the hay, without imposing terms, by way of a continuance or otherwise, which would prevent the possibility of prejudice resulting to defendant.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Pleading, §§ 626, 653, 677.]

In Error to the Circuit Court of the United States for the District of North Dakota.

Herron recovered a judgment against the railway company for damages suffered through the burning of his hay and other property by fire claimed to have been communicated thereto through the negligence of the company. Without contradiction, the evidence established plaintiff's ownership of the property; its value; its destruction by fire in the afternoon of the day named; the location of the property at a distance of about three miles northeasterly from defendant's railroad; the presence of fire in dead grass in close proximity to the railroad, and on the north side of the track, immediately after the passage of one of defendant's trains, in the forenoon of the day named; and the existence of a wind from the southwest. The plaintiff testified that marks indicating the course of the fire showed that it approached his property from the southwest. One of plaintiff's witnesses, William Sipple, who was riding on a horse and driving some cattle in the vicinity of the railroad, and on the south side thereof, testified: "Saw a fire start in that vicinity on that day. There was a train passed there on the Great Northern while I was there. * * * Saw the fire start that day about the vicinity where I was. * * * The right of way was not burned over where the fire started at all. The breaks was plowed up, but they was not burned out there. The fire started near the railroad. I was off from the track about a quarter of a mile. It might have been ten feet from the track, or it might have been forty feet. I cannot just exactly say. They had plowed the breaks up, but I do not know how many furrows. I think the fire started inside the breaks. I saw fire immediately after the train passed. Grass was dead that season of the year. Watched the fire go northeast. * * * I saw the fire after it reached the hay meadow of the plaintiff. * * * I know it was the same fire. * * * I do not know just how high the grade is along at the point of this fire. Not very high. Not three or four feet. * * * The only means I have of judging where it started—at what particular point—was by looking over the railroad grade between me and the place where it started. * * * The land on the right of way where I was at the time I saw the fire was level. It was higher a little closer to the track. The railroad and land at the place where the fire

started was in plain view. I had been along there the day before. The land where the fire started was in plain view. * * * The right of way had been burned east of the fire on the top of the hill. It had not been burned where the fire started. I rode by a day or two before, and it was not burned. Grass was heavy and dry at point of fire when I passed the point prior to the fire. * * * At the time I saw the fire start, * * * the prairie north and east of the place where I saw the fire was covered with grass. At the time I saw this fire start near the railroad track, I could see no other fire near there." Referring to a statement which he had previously signed,. saying: "I was probably a half mile or more from the fire when it started. The wind seemed to take the fire northeasterly. I do not know where it went. * * * Went near enough so I could see Herron's hay burning. * * * I did not trace the fire, but supposed it was the same fire that I saw down at the track"—the witness further said: "That is a true statement. * * * But what I meant by that there was where the fire went when it left Herron's place." Sven Svenson, a witness for plaintiff, testified that he was at plaintiff's premises on the afternoon of the day of the fire, and further: "The plaintiff's hay meadow was a little northeast of fire. The fire was burning northeast. * * * So far as I could see west and southwest, it was fire all the way along. * * * I saw the fire going in the direction of Mr. Herron's land. I went down to see where it was going. * * * At the time I started for home the fire was about forty rods from the Herron's fire break."

It is conceded that there were other fires in that general vicinity at the time, but there was evidence on behalf of plaintiff tending to show that the fire described as traveling northeasterly from the railroad was nearer to plaintiff's premises than any of the others, and was the one which destroyed his property. The brakeman and fireman on defendant's train, and the section foreman, who was one-half mile away at the time, gave testimony for defendant, which, while containing some elements of improbability, as did the testimony of the witness, Sipple, for plaintiff, tended to show that, when the train passed the point indicated by Sipple as the place where the fire started, there was a fire in the grass on the north side of the track, distant therefrom 175 to 250 feet; that this fire had originated elsewhere, and was then "back-burning" against the wind and towards the track; and that no new fire was started in that vicinity at that time. The brakeman, in answer to the question, "Was there any place left in that vicinity where the right of way was not burned off?" said, "There was dirt and grass, and one thing and another, that was not burned." The width of the right of way and the distance from the track to the north line of the right of way were not disclosed, except as indicated in the testimony of the witness Sipple.

The complaint contained these allegations of negligence on the part of defendant: "That the defendant, by reason of allowing grass and other inflammable material to exist and remain along their right of way, and by reason of their careless and negligent manner of operating said engines and trains along said railway, did permit and allow fire to escape from said engines and trains. * * * By reason of said fire being allowed and permitted to escape from said engines and trains, the property of the plaintiff herein was entirely burned and destroyed. * * * That the plaintiff has been damaged by reason of the foregoing acts," etc. There was also an allegation that the property burned and destroyed, including a cattle shed, "was located on section 36" of a designated township and range. The record shows the following rulings relating to these allegations were made during the course of the trial: "Q. Do you know what the condition of the right of way was where you saw this fire start? (Objected to by the defendant * * * because there is no averment as to the condition of the right of way in the complaint.) The Court: That there is no averment that the fire originated in any inflammable matter upon the right of way, or that that had anything to do with the destruction of your property, is a more serious defect, I should think. Mr. Burke: Of course, that probably ought to be amended, and I ask leave to amend it in that particular. They are not taken by surprise in that at all. Mr. Wellington: Now, your honor, I object to any amendment in the pleading in that particular. We are taken by surprise. We come to meet the complaint as it stands. We haven't an inspection of the engine here, or any-

thing of the kind. The Court: I think the complaint is very informal, but I will allow evidence in regard to the conditions of the right of way, and its connection with the fire. You may proceed. (Objection overruled, and exception allowed defendant.) Plaintiff moves to amend his complaint so that same will allege that the cattle shed therein referred to was located about three-quarters of a mile southeast of section 36. The defendant objected for the reason that, relying upon the allegations of the complaint, it has prepared its case and had its witnesses examine on school section 36, to determine the existence of any of said cattle sheds as alleged, and, being now taken by surprise, it is not prepared to meet the evidence in that regard. (Objection overruled, and defendant allowed an exception.)" The largest value given to the cattle shed by the evidence was $150. At the conclusion of the evidence, defendant requested that a verdict be directed in its favor. The request was denied, but the court withdrew from the consideration of the jury the charge that the engines and trains had been carelessly and negligently operated, because not sustained by any evidence, and submitted to their consideration the charge that defendant was guilty of negligence in permitting an unreasonable accumulation of dry grass and inflammable material upon its right of way, that this material was ignited by fire which escaped from the locomotive of the train named in the evidence, and that this fire was carried by the wind to plaintiff's premises, and destroyed his property. This was excepted to by defendant.

C. J. Murphy (F. S. Duggan, on the brief), for plaintiff in error.

John Burke (D. C. Greenleaf, K. E. Leighton, and Henry G. Middaugh, on the brief), for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The statute invests the courts of the United States with large discretion in permitting the correction of defects in pleadings and process by amendment, and rulings of this character constitute no ground for reversal unless the discretion is grossly abused. Rev. St. § 954, U. S. Comp. St. 1901, p. 696; Lange v. Union Pacific R. Co., 62 C. C. A. 48, 126 Fed. 338; Rucker v. Bolles (C. C. A.) 133 Fed. 858.

The complaint only imperfectly charged the defendant with negligence in the care of its right of way, and only inferentially charged that such negligence was a proximate cause of the destruction of the plaintiff's property; but it did contain an allegation upon the subject, and that allegation, although defective, could not reasonably have failed to apprise the defendant that the recovery sought by the plaintiff was rested upon the existence of an unreasonable accumulation of inflammable material upon the right of way, and not solely upon the negligent operation of the engines and trains. Some purpose was to be attributed to that allegation, and its only possible purpose was to charge negligence in the care of the right of way, as a proximate cause of the plaintiff's loss. Instead of introducing into the complaint a new charge of negligence, the first amendment merely corrected a defect in an existing allegation, the purpose of which was apparent, and the effect of which had been permitted to go unchallenged up to that time. As the defendant could not reasonably have been taken by surprise by the amendment, there was no abuse of discretion in its allowance.

The other amendment wrought such a change in the plaintiff's claim

that it should not have been permitted, except upon terms which would have been just to the defendant, such as a continuance of the cause, and payment by the plaintiff of the costs incident to the continuance. The complaint alleged that the cattle shed, with the other property destroyed, was located on section 36; and the defendant, acting upon this statement, caused investigation to be made to ascertain what improvements and property were on that section at the time of the fire, and prepared its defense according to the result of that investigation. If the plaintiff intended to claim damages because of the burning of a cattle shed widely separated from the other property, and located three-fourths of a mile away from section 36, the allegation in the complaint was misleading; and quite naturally the amendment took the defendant by surprise, and deprived it of an opportunity to defend against that part of the plaintiff's claim. The allowance of the amendment, without imposing any terms to prevent its working prejudicially to the defendant, was an abuse of discretion, and the error will require a reversal of the judgment unless the plaintiff shall remit therefrom a sufficient sum to make the error without possible prejudice.

In support of the contention that a verdict for the defendant should have been directed, it is said there was no substantial evidence that the fire was started in the inflammable material upon the right of way by the passing train, or that that was the fire which destroyed the plaintiff's property. As shown in the foregoing statement, the evidence respecting the origin and identity of the fire was somewhat meager, but it was almost necessarily so, because the fire occurred in a sparsely settled locality, where its origin and course might not be observed by many witnesses, and might be observed only from a considerable distance. Obviously, this did not justify the submission of the case to the jury without evidence that the origin of the fire, and its connection with the destruction of the plaintiff's property, were such as to make the defendant liable, but it did have a bearing upon the degree and character of proof which could be reasonably required of the plaintiff. We are of opinion that the evidence justified the submission of the case to the jury.

The judgment will be reversed, and the case remanded for a new trial, unless the defendant in error, by a proper remittitur in the court below, remits from the judgment $150, the largest value given to the cattle shed by the evidence, together with a proportionate amount of any interest which may have accrued upon the judgment, and files a certified transcript of such remittitur in this court within 40 days from the filing of this opinion, in which event the judgment will be affirmed at the costs of the defendant in error.